## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-CR-228 (TSC)** |
| | : | |
| **v.** | : | |
| | : | **18 U.S.C. § 1361** |
| **STEPHEN ROY SEXTON,** | : | **18 U.S.C. § 1752(a)(2)** |
| | : | |
| **Defendant.** | : | |
| | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Stephen Roy Sexton, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.     On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### The Defendant's Participation in the January 6, 2021, Capitol Riot

8.      In November 2020, Stephen Roy Sexton, a resident of Daytona Beach, Florida, began posting on Facebook that the 2020 presidential election had been stolen from then-President Donald Trump, describing the election in one Facebook post as "a political take over [of] the United States government." Beginning in December 2020, Sexton frequently discussed his plans on Facebook to travel to Washington, D.C. on January 6, 2021 in anticipation of the certification of the Electoral College vote. He also frequently encouraged others to travel to D.C. that day, sharing news coverage discussing the certification proceedings.

9.      On the afternoon of January 5, Sexton sent a Facebook message to a group coordinating travel for the Jan. 6 protest, sending a selfie photo of himself driving and adding the caption, "On the way see you soon."

10.     In other Facebook messages coordinating travel to Washington, D.C. on Jan. 6, 2021, Sexton advised others to bring a "walking stick" with them—as Sexton himself did on Jan. 6—and he indicated that it could be used as a weapon. On Jan. 4, he advised others to "crack it against the tree to make sure it's solid."

11.     In the days prior to Jan. 6, Sexton frequently compared the events surrounding the 2020 presidential election to the start of the American Revolutionary War. For example, on Jan. 3, 2021, Sexton wrote on Facebook, "Donald Trump is the modern-day equivalent to Paul Revere." In a private Facebook message to other individuals planning to travel to Washington, D.C. on January 6, Sexton stated, "Paul Revere the Redcoats are coming."

12.     On the morning of January 6, 2021, Sexton attended President Trump's speech at the Ellipse near the White House before marching to the U.S. Capitol with others carrying a large American flag. That day, Sexton carried a wooden walking stick and wore military green, soft body armor underneath his clothing.

13.     After entering onto Capitol grounds, Sexton approached the west side of the U.S. Capitol building, Sexton reached the Lower West Terrace area of Capitol grounds immediately west of the Capitol building. Sexton remained in this area for several hours, primarily on a window ledge where he witnessed significant violence between rioters and police. Sexton recorded this violence with his smartphone, at one point seeing rioters in military-style clothing and equipment and yelling, "Oh shit, the militia's here. The motherfucking militia's here."

14.     As Sexton stood on the Upper West Terrace window ledge, other individuals began smashing the windows behind him in order to access a Capitol building room known as ST-2M. As the glass was being smashed, Sexton stepped up onto a platform elevating himself above those around him and yelled, "We've got a breach! We've got a breach! We need militia! Militia!" As individuals begin to enter through the broken window, Sexton took a "selfie" photo of himself next to the broken window before yelling, "Militia! Militia! Let's go! Keep it moving!"

15.     Video footage taken by Sexton and others shows that Sexton also entered through this broken window into room ST-2M inside the U.S. Capitol building. Sexton recorded multiple videos while inside room ST-2M in which he and the room are recognizable.

16.     Sexton committed and attempted to commit multiple acts of property damage while in ST-2M.

      a.  First, Sexton approached a wooden table in ST-2M and began kicking at it until the wood eventually splintered and snapped off. He then pried it from the table with his hand, walked away with it, and eventually exited the Capitol building carrying it. This table was the property of the U.S. government.

      b.  Second, rioters in ST-2M later picked up a table and began carrying it through a door. Sexton attempted to pull the damaged door from its hinges as rioters attempted to carry the table through the doorway. This door was the property of the U.S. government.

17.     At approximately 5:04 p.m., law enforcement deployed tear gas cannisters on the Lower West Terrace outside of ST-2M and began clearing rioters from the area. As officers began deploying tear gas, Sexton quickly exited ST-2M by climbing back out the broken window. As he exited, he carried his walking stick in his left hand and the broken-off table leg in his right hand.

18.     On the evening of January 6, 2021, a Facebook friend asked Sexton, "Yall beating up the Antifia?" Sexton responded by sending a video of violence between rioters and law enforcement on the Lower West Terrace and wrote to the Facebook friend, "Lol it was wild." On Jan. 7, the same Facebook friend asked, "Civil war is coming … You agree?" Sexton replied, "It started yesterday where you been." Sexton later messaged the friend, "Don't ever show anyone that again in fact erase the pictures." On January 9, Sexton messaged another Facebook friend, "I'm currently blocked on Facebook my phone was hacked last night a lot of my videos and pictures are missing."

19.     In the weeks following January 6, 2021, Sexton made several statements on Facebook describing the events at the Capitol as the start of a "civil war." On Jan. 8, Sexton wrote, "our country died On Wednesday." On Jan 10, Sexton shared a news article about the Capitol breach and wrote, "It is an official start to the Civil War." On Jan. 11, Sexton wrote on Facebook, "The Insurrection act has been invoked" and "We are at war." That same day, Sexton shared a post from social media site Parler from an account impersonating President Trump, who claimed to have invoked the Insurrection Act "to address the treasonous rebellion" and that he would "remain president indefinitely until all domestic enemies are arrested."

20.     On April 19, 2021, during the course of the investigation into Sexton's conduct on January 6, 2021, law enforcement officials with the Federal Bureau of Investigation interviewed Sexton at his home in Daytona Beach, Florida, where he agreed to voluntarily speak with officers. During this interview, Sexton falsely told officers that he entered the building because he heard people screaming inside for help, and that he left after seeing people inside the building damaging property. Sexton offered to send agents the photos and videos he recorded that day.

21.    On April 22, 2021, Sexton emailed photos and videos to the agents, and he reiterated the falsehoods told to agents on April 19, stating: "I heard one of the people in the room scream that they had some people trapped in another room and I did not want anyone to get hurt so I went inside the building so that I could at least prevent someone from being mobbed and at least I would be able to get video of everyone in the room." Additionally, Sexton sent one video to law enforcement that was a cropped, shortened version of a video recorded by Sexton that was later recovered from his Facebook account.

### *Elements of the Offense*

22.    The parties agree that 18 U.S.C. § 1361 requires the following elements:

    a.   First, the defendant injured, damaged, or destroyed property.

    b.   Second, the defendant did so willfully.

    c.   Third, the property involved was property of the United States, or of any department or agency thereof; however, the government does not need to prove that the defendant knew that the property belonged to the United States.

23.    The parties agree that 18 U.S.C. § 1752(a)(2) requires the following elements:

    a.   First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

    b.   Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

    c.   Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

### *Defendant's Acknowledgments*

24.    The defendant knowingly and voluntarily admits to all the elements as set forth above.

    a.  First, the defendant admits that he willfully damaged property of the United States, or of any department or agency thereof.

    b.  Second, the defendant admits that he knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engaged in disorderly or disruptive conduct in, or within such proximity to, a restricted building or grounds when, or so that, such conduct, in fact, impeded and disrupted the orderly conduct of Government business and official functions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Hutton Marshall*
      J. HUTTON MARSHALL
      PAVAN S. KRISHNAMURTHY
      Assistant U.S. Attorneys
      DC Bar No. 1721890
      601 D Street, N.W.
      Washington, D.C. 20579
      (202) 809-2166
      Joseph.hutton.marshall@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Stephen Roy Sexton, have read this Statement of the Offense and have discussed it with my attorneys. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _8-19-24_

Stephen Roy Sexton
Defendant

## ATTORNEYS' ACKNOWLEDGMENT

We have read this Statement of the Offense and have reviewed it with our client fully. We concur in our client's desire to adopt this Statement of the Offense as true and accurate.

Date: _8/19/24_

Casey P. Riddle
Edmund G.M. Neyle
Attorneys for Defendant